UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

JORDAN M. WILLIAMSON,

   Plaintiff,

v.                                                                                      Case No. 0:23-cv-62224

NATIONAL CREDIT SYSTEMS, INC.,

   Defendant.

_____/

## COMPLAINT

**NOW COMES** JORDAN M. WILLIAMSON ("Plaintiff"), by and through the undersigned counsel, complaining as to the conduct of NATIONAL CREDIT SYSTEMS, INC. ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Fair Credit Reporting Act ("FCRA"), pursuant to 15 U.S.C. § 1681, the Fair Debt Collection Practices Act ("FDCPA"), pursuant to 15 U.S.C. § 1692, and the Florida Consumer Collection Practices Act ("FCCPA"), pursuant to Fla. Stat. § 559.55.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA, the FDCPA and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

1

3. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Plaintiff resides in the Southern District of Florida, Defendant conducts business in the Southern District of Florida and all of the events or omissions giving rise to Plaintiff's claims occurred in this Southern District of Florida.

**PARTIES**

5. Plaintiff is a consumer and a natural person over 18-years-of-age who, at all-times relevant, resided in Lauderhill, Florida.

6. Defendant is a "specialized collection firm helping apartment owners and managers recover money that is rightfully owed to them by former residents who have not fulfilled their lease obligation.[1] Defendant collects or attempts to collect, directly or indirectly, defaulted debts owed or asserted to be owed to others. Defendant's principal place of business is located at 1775 The Exchange SE, Suite 300, Atlanta, Georgia 30339.

7. Viva Owner, LLC is a landlord and housing operator who manages Pacific Point and Cypress Creek apartments. The property referenced to in this Complaint is located at 4803 E. Pacific Point Ave., Apt. 201, Building 12, Ft. Lauderdale, Florida 33309.

---

[1] https://www.nationalcreditsystems.com/

8. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

9. In January 2020, Plaintiff entered into a lease agreement with Pacific Point and Cypress Creek ("landlord") for an apartment unit ("property").

10. After experiencing health issues attributed to mold within the property during the third week of occupancy, Plaintiff diligently communicated the problem via email to her landlord.

11. Throughout 2021, despite persistent complaints, Plaintiff's health deteriorated, leading to rental payment delinquencies. In around December 2021, Plaintiff applied for federal rental assistance.

12. The situation evolved when the management of the apartment complex underwent a transition in March 2022. The new management company engaged with the government to assist Plaintiff in securing rental aid.

13. By March 28, 2022, Plaintiff received approval for a substantial sum of around $12,000 from the rental assistance program. However, the renaming of the management company caused confusion and hindered Plaintiff's ability to sign a new lease, as the outstanding rent needed resolution.

14. In May 2022, Plaintiff discovered that Viva Owner, LLC ("Viva"), had taken over the management of the property.

15. Despite having the approval letter for rental assistance, Plaintiff was unable to sign a new lease and Viva categorized her as a holdover tenant.

16. Compounding her challenges, Plaintiff was hospitalized in June 2022 due to both COVD-19 and mold exposure resulting from the property. Plaintiff's hospital stay extended until the beginning of August 2022.

17. Further challenges arose concerning the whereabouts of the $12,000 check Plaintiff was approved for when she applied for rental assistance. Simultaneously, Plaintiff applied for additional rental assistance and was awarded $17,300.29. However, as of October 21, 2022, documentation from Viva indicated that Plaintiff's outstanding balance was $7,077 ("subject debt").

18. In November 2022, eviction proceedings were initiated against her. The County Court for Broward Florida (Case Number: CONO-22-007094) entered judgment for Viva, ordering Plaintiff to pay the sum of $7,077.00, though Plaintiff retained possession of the premises.

19. Facing pressure from Viva, Plaintiff moved out of her unit in December 2022, having been informed that full payment wouldn't allow her to stay at the apartment complex.

20. Notably, Plaintiff received the $17,300.29 federal rental assistance check on December 14, 2022, which exceeded her outstanding balance. Plaintiff delivered her rental assistance check to Viva before vacating the premises paying the subject debt off in full.

21. Sometime thereafter, the subject debt was placed with Defendant for collections.

22. Despite possessing evidence that she only owed $7,077 as of October 12, 2022, Defendant began collecting on the subject debt in May 2023 for an escalated amount of around $10,148.00.

23. Defendant proceeded to place numerous collection calls to Plaintiff in efforts to collect on the subject debt.

24. Soon after the excessive collection call campaign began, Plaintiff communicated to Defendant that she paid the subject debt to Viva and to not call her further.

25. Moreover, in May 2023, Plaintiff accessed her consumer credit reports and discovered Defendant was actively reporting the subject debt to her TransUnion and Equifax credit files.

26. Specifically, TransUnion was reporting the subject debt with a balance of $10,148.00, its current rating as "collection/charged-off," and a status of "closed." Equifax was reporting the subject debt with a balance for $10,148.00, its current rating as "collection/charged-off," and a status of "open."

27. The reporting of the subject debt was inaccurate, incomplete, and materially misleading because the subject debt was paid off by Plaintiff when she delivered her rental assistance check to Viva after vacating the premises.

28. On August 27, 2023, Plaintiff initiated a credit dispute with TransUnion and Equifax requesting that TransUnion and Equifax review the completeness,

5

accuracy and appropriateness of the subject account. Specifically, Plaintiff stated Defendant is inaccurately reporting the subject debt and "this account is settled."

29.     Upon information and belief, Defendant received notice of Plaintiff's dispute within five days of Plaintiff initiating the dispute with TransUnion and Equifax. *See* 15 U.S.C. § 1681i(a)(2).

30.     Following Plaintiff's disputes with TransUnion and Equifax, Defendant failed to reasonably investigate Plaintiff's claims. In spite of the fact that the subject debt was paid off, Defendant verified the erroneous and misleading subject debt by continuing to report the subject debt to Plaintiff's TransUnion and Equifax's credit files.

31.     Any reasonable investigation by Defendant would have revealed the materially misleading nature of the information on Plaintiff's consumer credit reports.

32.     Specifically, Defendant continued to report the subject debt to Plaintiff's TransUnion and Equifax's credit files, after Plaintiff communicated and notified TransUnion, Equifax and Defendant that the subject debt was paid off when she provided Viva with her federal rental assistance check.

33.     Plaintiff's credit score had experienced a significant decline as a result of the inaccurate reporting on the subject debt by Defendant.

34.     To this date, Defendant continues to inaccurately report the subject debt to Plaintiff's TransUnion and Equifax credit files.

35.     The reporting of the subject account trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Plaintiff is still

6

obligated to pay the subject debt, despite the subject debt being paid off when she provided Viva with her federal rental assistance check after vacating the premises.

36. Despite the subject debt being paid off, Defendant continued to call Plaintiff in an attempt to collect on the subject debt.

37. Efforts to cease Defendant's calls proved ineffective as numerous collection calls were placed to Plaintiff's cellular phone seeking immediate payment on the subject debt.

38. Plaintiff engaged in further correspondence with Defendant, specifically with a Defendant supervisor, where Plaintiff provided Defendant with document proof, sent on multiple occasions, with the latest occurring on October 2 and 4, 2023.

39. On October 19, 2023, despite Plaintiff's efforts, Defendant contacted Plaintiff demanding the submission of her documents.

40. On November 7, 2023, Plaintiff *again* explicitly requested Defendant cease communication of its collection calls.

41. Frustrated over Defendant's conduct, Plaintiff spoke with undersigned counsel regarding her rights with the hope of ending the harassing attacks and unfair practices by Defendant.

### IMPACT OF INCORRECT REPORTING ON PLAINTIFF'S CREDIT FILE

42. As of today, Defendant's erroneous reporting continues to paint a false and damaging image of Plaintiff. Defendant has yet to delete its reporting of the subject debt as it was never owed to Defendant and should have never been sent to collections.

43. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to her ability to regain a firm foothold on her creditworthiness, credit standing, credit capacity, and her ability to move forward after moving out of her rental unit.

44. The inaccurate and incomplete reporting of subject debt continue to have significant adverse effects on Plaintiff's credit rating because it creates a false impression that Plaintiff is still obligated to pay the subject debt, rendering Plaintiff a high-risk consumer and damaging her creditworthiness.

45. The inaccurate reporting of the subject debt caused Plaintiff to be denied housing opportunities.

46. As a result of the conduct, actions, and inaction of the Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit opportunity, time expended meeting with her attorneys, tracking the status of her disputes, monitoring her credit file, and mental and emotional pain and suffering.

47. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to resolve the erroneous credit reporting.

### COUNT I – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

48. Plaintiff restates and reallages paragraphs 1 through 47 as though fully set forth herein.

49. Plaintiff is a "consumer" as defined by 15 U.S.C. §§ 1681a(b) and (c).

50. Plaintiff is a "person" as defined by 15 U.S.C. § 1681a(b).

51. Defendant is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. § 1681a(t).

52. At all times relevant, the above-mentioned credit reports were "consumer reports" as the term is defined by § 1681a(d)(1).

53. Defendant violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from TransUnion, Equifax and Plaintiff.

54. Defendant violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information, provided by TransUnion, Equifax and Plaintiff, pursuant to 15 U.S.C. § 1681i(a)(2).

55. Had Defendant reviewed the information provided by TransUnion, Equifax and Plaintiff, it would have corrected the inaccurate designation of the subject debt, transmitting the correct information to TransUnion and Equifax. Instead, Defendant wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

56. Defendant violated 15 U.S.C. § 1681s-2(b)(1)(C) by failing to report the complete results of the investigation or reinvestigation of Plaintiff's dispute with TransUnion and Equifax.

57. Defendant violated 15 U.S.C. § 1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to TransUnion and Equifax after being put on notice and discovering inaccurate, incomplete, and misleading reporting with respect to the subject debt.

58. Defendant violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information from appearing and reappearing on Plaintiff's credit file.

59. Defendant failed to conduct a reasonable investigation of its reporting of the subject debt, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of Plaintiff's dispute from TransUnion and Equifax under 15 U.S.C. § 1681i(a)(1).

60. Despite the blatantly obvious errors in Plaintiff's credit file, and Plaintiff's efforts to correct the errors, Defendant did not correct the errors or the trade line to report accurately and completely. Instead, Defendant wrongfully furnished and re-reported the inaccurate, incomplete and misleading information after Plaintiff's dispute to one or more third parties.

61. A reasonable investigation by Defendant would have confirmed the veracity of Plaintiff's dispute, yet the inaccurate information continues to be reported in Plaintiff's TransUnion and Equifax credit files.

62. Had Defendant taken steps to investigate Plaintiff's valid dispute or TransUnion's and Equifax's request for investigation, it would have permanently corrected the erroneous, incomplete, and materially misleading credit reporting. Plaintiff provided all relevant information to support her valid dispute in her requests for investigation.

63. By deviating from the standards established by the FCRA, Defendant acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to TransUnion and Equifax.

64. As stated above, Plaintiff was severely harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff JORDAN M. WILLIAMSON, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing that TransUnion and Equifax immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

d. Award Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. § 1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. § 1681n;

f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. § 1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

65. Plaintiff restates and realleges paragraphs 1 through 64 as though fully set forth herein.

66. Plaintiff is a "consumer" as defined by FDCPA § 1692a(3).

67. The subject debt is a "debt" as defined by FDCPA § 1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

68. Defendant is a "debt collector" as defined by § 1692a(6) because its primary business is the collection of delinquent debts and it regularly collects debts and uses the mail and/or the telephones to collect delinquent accounts allegedly owed to a third party.

69. Moreover, Defendant is a "debt collector" because it acquired rights to the subject debt after it was in default. 15 U.S.C. § 1692a(6).

70. Defendant used the phone calls to attempt to collect the subject debt and, as such, engaged in "communications" as defined in FDCPA § 1692a(2).

71. Defendant used credit reporting to attempt to collect the subject debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

72. Defendant's communications to Plaintiff were made in connection with the collection of the subject debt.

73. Defendant violated 15 U.S.C. §§ 1692d, d(5), e(2), e(8), e(10) and f through its unlawful debt collection practices.

      **a.   Violations of FDCPA § 1692d**

74. Pursuant to 15 U.S.C. § 1692d, a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

75. Defendant violated 15 U.S.C. § 1692d by engaging in abusive, harassing and oppressive conduct by relentlessly calling Plaintiff's cellular phone seeking immediate payment for the subject debt. Moreover, Defendant continued placing harassing collection calls to Plaintiff's cellular phone after Plaintiff put Defendant on notice that its calls were not welcomed.

76. Pursuant to 15 U.S.C. § 1692d(5), a debt collector may not cause a telephone to ring or engage any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number.

77. Defendant violated 15 U.S.C. § 1692d(5) by causing Plaintiff's phone to ring repeatedly and continually in an attempt to engage Plaintiff in conversations regarding the collection of the subject debt, with the intent to annoy, abuse or harass Plaintiff.

78. Furthermore, Defendant continued to place these calls after Plaintiff informed Defendant its calls were no longer welcome. Defendant placed or caused to be places numerous harassing phone calls to Plaintiff's cellular phone from May 2023 through the present day.

### b. Violations of FDCPA § 1692e

79. Defendant violated § 1692e(2) when it misrepresented the character, amount, or legal status of the subject debt. The subject debt was not owed to Defendant after the subject debt was paid off when Plaintiff delivered her rental assistance check to Viva after vacating the premises. However, Defendant continued to report the subject debt to Plaintiff's TransUnion and Equifax credit files. Specifically, Defendant was reporting the subject debt with a balance of $10,148.00, its current rating as "collection/charged-off," and a status of "closed," to Plaintiff's TransUnion credit file. Defendant was reporting the subject debt with a balance for $10,148.00, its current rating as "collection/charged-off," and a status of "open," to Plaintiff's Equifax credit file.

80. Defendant violated § 1692e(8) by threatening and communicating patently false credit information to TransUnion and Equifax that it knew, or should have known, to be false by inaccurately reporting of the subject debt. This information was inaccurate and misleading because the subject debt was not owed to Defendant after the subject debt was paid off when Plaintiff delivered her rental assistance check to Viva after vacating the premises. However, despite the subject debt not being owed, Defendant continued to report the subject debt to Plaintiff's TransUnion and Equifax credit files.

81. Defendant had actual knowledge that the subject debt was inaccurate because it received notices of Plaintiff's disputes from Plaintiff, TransUnion and Equifax.

14

82. Defendant violated § 1692e(10) when it used false representations and/or deceptive means to collect and/or attempt to collect the subject account. By continuing to report the subject debt, Defendant created a materially misleading and false representation that Plaintiff is still obligated to pay the subject debt, despite the subject debt being paid off. Moreover, even after Plaintiff disputed the subject debt, Defendant continued to report the subject debt to Plaintiff's TransUnion and Equifax credit file.

   c. **Violations of FDCPA § 1692f**

83. Defendant violated § 1692f when it used unfair and unconscionable means to collect the subject debt. The subject debt no longer owed to Defendant as it was paid off after Plaintiff delivered her rental assistance check to Viva. However, Defendant tried to dragoon Plaintiff into making a payment by reporting the subject account to her TransUnion and Equifax credit files and to compel her into believing she is obligated to pay the subject debt, despite it being resolved with Viva.

84. Upon information and belief, Defendant has no system in place to identify and correct collection of debts that was not owed.

85. As stated above, Plaintiff was severely harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff JORDAN M. WILLIAMSON, respectfully requests that this Honorable Court enter judgment in her favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

   b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. § 1692k(a)(2)(A);

    c.    Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1692k(a)(1);

    d.    Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k(a)(3); and

    e.    Awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT II – VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT**

86. Plaintiff restates and realleges paragraphs 1 through 85 as though fully set forth herein.

87. Plaintiff is a "debtor" or "consumer" as defined by Fla. Stat. § 559.55(8).

88. Defendant is a "debt collector" as defined by Fla. Stat. § 559.55(7).

89. The subject debt is a "consumer debt" as defined under Florida Statute § 559.55(6).

    a.    **Violations of FCCPA § 559.72(7)**

90. A debt collector violates Fla. Stat. § 559.72(7) when it willfully communicates with the debtor with such frequency as can reasonably be expected to harass the debtor, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor.

91. Defendant violated Fla. Stat. § 559.72(7) of the FCCPA when it placed repeated harassing phone calls to Plaintiff after Plaintiff demanded that Defendant stop calling her. Defendant ignored Plaintiff's request and continued to place numerous harassing phone calls to Plaintiff's cellular phone.

16

92. Defendant's actions show that it was their specific goal to harass and annoy Plaintiff enough to the induce her into making a payment even after being put on notice that Plaintiff did not owe the subject debt and would no longer like to receive phone calls from Defendant.

93. This repeated behavior of systematically calling Plaintiff's phone despite her demands, in an attempt to collect a debt not owed by Plaintiff was harassing and abusive. Such contacts were made with the hope that Plaintiff would succumb to the harassing behavior and ultimately make a payment. The nature and volume of phone calls, especially after Plaintiff demanded that the calls stop, would naturally cause an individual to feel oppressed.

94. A debt collector violates Fla. Stat. § 559.72 (9) when a "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

95. Defendant violated Fla. Stat. § 559.72 (9), when Defendant attempted to collect on the subject debt that it knew was not legitimate. Although Plaintiff paid the subject debt directly to Viva, using her rental assistance check, Defendant asserted that it had the legal right to collect on the subject debt despite it being paid off. Moreover, Defendant communicated to TransUnion and Equifax that the subject debt was legitimate after Plaintiff disputed the subject debt.

96. As stated above, Plaintiff was harmed by Defendant's illegal conduct.

**WHEREFORE**, Plaintiff JORDAN M. WILLIAMSON, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. A judgment in Plaintiff's favor for Defendant's violations of the FCCPA;

b. Enjoin Defendant from further communicating with Plaintiff;

c. Award Plaintiff actual damages in the amount to be determined at trial;

d. Award Plaintiff statutory damages of $1,000.00 pursuant to FCCPA;

e. An award of reasonable attorney's fees and costs pursuant to FCCPA;

f. Any further relief this Honorable Court deems just and proper.

**Plaintiff demands trial by jury.**

Dated: November 21, 2023                                   Respectfully Submitted,

/s/ Alexander J. Taylor
Alexander J. Taylor, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com